This matter came before me on the return of an order to show cause why the preferred stockholders should not contribute a suitable allowance for the solicitor of the complainant out of the fund "created and recovered for the benefit of said preferred stockholders," and also why the petitioner should not be reimbursed by the defendant for disbursements for services for the accountants and for the printing of briefs submitted to the Court of Errors and Appeals, and for such other relief.
By the terms of the final decree, after the remittitur came down from the Court of Errors and Appeals, a deposit was made by the defendant of the sum of $301,028 in one of the banks of this state to there remain until this court should determine the counsel fees, if any, to be allowed to the solicitor of the complainant. The amount thus deposited was at the rate of $1.04 per share of the preferred stock.
Counsel for the defendant and counsel for the several preferred stockholders urge that no allowance should be made to the solicitor of the complainant from the fund so on deposit which fund was deducted from the dividends due to the preferred stockholders by reason of the decree of this court.
The defendant argues that because the individual preferred stockholders were not parties to the suit in the first instance no effective or binding decree can be made against them. In this connection they argue that no jurisdiction over the person can be obtained by petition and order to show cause and cite the case ofIn re Kiger, 98 N.J. Eq. 512. The defendant also contends that "there is no fund in court over which the court can exercise control to make the allowance sought," and that "in the absence of a fund over which this court can *Page 303 
exercise control, the court is wholly without power to make the requested allowances."
It seems to me that it was not necessary for the solicitor of the complainant to serve notice under an order to show cause on each individual stockholder. The defendant's reserve account, under the effect of the final decree, is charged with the payment of dividends and must be used for that purpose if dividends are to be paid to the common stockholders.
Costs are of two kinds: those between party and party and those between solicitor and client. See Strong Sons v. Mundy,52 N.J. Eq. 833, 835. The first mentioned are fixed allowances based on the statute. The latter, comprehend the expenses of the litigation. See Sprague v. Ticonic National Bank,307 U.S. 161; 83 L.Ed. 1184. Counsel fees awarded to a successful party come within the last mentioned classification.
There appear to be two points of view in respect to costs in equity. One point of view is that the court had no inherent authority to award costs independent of statute since costs were not known at early common law and were only introduced into the practice following the enactment of enabling legislation. The other is that costs in equity are not necessarily dependent upon statute. It is said that the award of costs is a matter for the conscience of the Chancellor, resting in his sound discretion and exercised by him after considering all the circumstances. See 15C.J. tit. "Costs" 21 § 3 f.n. 26, c. See, also, 20 C.J.S. tit."Costs" 261 § 2.
This court, as well as the Court of Errors and Appeals, has expressed both views. In re Welsh, 93 N.J. Eq. 303, 305, it is said that:
"Allowance of counsel fee rests solely on the statutes, except where trust funds in the control of the court are being administered."
In the case of Clements v. Clements, 129 N.J. Eq. 350, 353,
it is clear that the allowances discussed were between party and party and not between solicitor and client.
The rule which applies to the matter before me is that a court of equity will, in the exercise of sound discretion, order an allowance of counsel fees, payable out of a fund, to a *Page 304 
complainant or directly to his counsel where he has, at his own expense, either maintained a successful suit for the preservation, protection or increase of a common fund, or brought into court a fund in which others, similarly situated, may share. This custom or practice originated in the English courts and was based on the theory that the others who benefit should, in good conscience, bear their fair share of the burden of the litigation. Daniell's Ch. Plead. Prac. (6th Am. ed.) [*]1377; 14 Am. Jur. tit. "Costs" §§ 70, 73, 74; 15 C.J. tit."Costs" § 210; 49 A.L.R. 1150 et seq.; 107 A.L.R. 749 et seq.;Trustees v. Greenough, 105 U.S. 527; 26 L.Ed. 1157; Sprague v.Ticonic National Bank, supra; Merwin, Eq. Eq. Plead. §1018.
Counsel fees are generally denied in equity unless the litigation concerns a fund in court or is permitted by statute,Nobile v. Bartletta, 112 N.J. Eq. 304; Universal, c.,Insurance Co. v. Caltagirone, 119 N.J. Eq. 491. Counsel for the defendant seem to urge that counsel fees cannot be allowed unless there is literally a fund in court. This is not true. A fund is chargeable with counsel fees as costs between solicitor and client where it is the subject of the litigation. SeeUniversal, c., Insurance Co. v. Caltagirone, supra. See, also, Clapp on Wills § 457, f.n. 4. It is not necessary that the fund be actually and physically in the possession of the court, or in the hands of the clerk of the court, or a receiver, or a trustee. It is sufficient if, as a result of the litigation, the fund is brought under the control of the court. An illustration of this is a suit to construe a will or a trust agreement. In such suits it is common practice to award counsel fees out of the decedent's estate or the trust fund, neither of which is in court, but is the subject-matter of the litigation and for that reason under the control of the court.
The defendant claims that all the decree did was to restrain the defendant from paying common dividends until the preferred dividends were paid for certain years. However, the result of the decree is that the directors must ultimately pay the dividends in question.
Any fund which has been protected by a court for the benefit of a class is, in a broad sense, a trust fund or a common *Page 305 
trust fund. See 49 A.L.R. 1161. It is also said that where a fund has been segregated and set apart by directors, who fail or refuse to use it for the purpose intended, the directors are deemed to be trustees of the fund. Fletcher, Corporations §5926. In the case of Carbon Steel Co. v. Slayback,31 Fed. Rep. 2d 702, the corporation itself was the only defendant. Counsel fees were awarded. The court found that Slayback's executors had brought $321,000 of the company's available assets "under the control" of the court by maintaining the necessary litigation and thereby protected the preferred stockholders from an illegal and wrongful distribution of the capital assets.
I am of the opinion that the application for counsel fees should not be in the nature of an application for a personal judgment against the individual preferred stockholders. I conclude that this court has jurisdiction of the fund and direct that the payment of a counsel fee, as an incident of the litigation, should be made from such fund by reason of the settled equitable principle that all who benefit by the litigation are charged with the costs thereof as well as by reason of the authority of the statute. R.S. 2:29-131, among other things, provides that:
"* * * the chancellor may make such allowances by way of counsel fee * * * as shall seem to him to be reasonable and proper, and shall direct which of the parties shall pay such allowances; or, where such allowances are ordered to be paid out of property or funds, shall specify and direct the property or funds liable therefor."
The complainant, if he cannot be said to have created, has at least preserved and protected a fund and has brought that fund under the control of this court.
I, therefore, will allow counsel for the complainant, from the fund on deposit, the sum of $31,839.50 which is on the basis of eleven cents per share for each share of preferred stock outstanding. I will also allow the sum of $2,000 to be paid by the defendant company as a counsel fee in the Court of Errors and Appeals, and the sum of $2,324.17 for moneys paid to complainant's accountants and for the printing of the briefs in the Court of Errors and Appeals, to be paid by the defendant company. *Page 306